**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**JUSTIN FREEMAN**                                                                               **PLAINTIFF**

**V.**                                         **CASE NO. 5:23-CV-5065**

**LYNN WHITTLE**                                                                                **DEFENDANT**

**OPINION AND ORDER**

  The Court now takes up Plaintiff Justin Freeman's Motion for Award of Attorney's Fees and Non-Taxable Costs (Doc. 65) and brief in support (Doc. 66). Defendant Lynn Whittle has filed a response in opposition to the Motion for fees and a supporting brief (Docs. 69 & 70). Freeman seeks $125,172.50 in attorney's fees and $23,830.95 for out-of-pocket non-taxable costs, for a total of $149,003.45. (Doc. 65, ¶ 3). Whittle objects to the award of fees and non-taxable costs, arguing that the hourly rate and hours billed are unreasonable and that many of the claimed costs are not compensable. For the reasons set forth in this Order, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Attorney's Fees and Costs. The Court will also award the taxable costs that Freeman seeks in his unobjected-to Bill of Costs (Doc. 64) pursuant to 28 U.S.C. § 1920.

  In April 2023, Freeman, a high school student in Madison County, Arkansas, brought this § 1983 action against Madison County and Lynn Whittle, a School Resources Officer. Freeman alleged that Whittle had used excessive force against him and arrested him without probable cause. Freeman also brought claims for assault and battery against Whittle.

  In June 2024, the Court granted Madison County's motion for summary judgment based on municipal immunity and dismissed the County as a party. *See* Doc. 37. In that

1

same order, the Court granted in part and denied in part Defendants' motion to exclude Freeman's use-of-force expert, limiting the expert's testimony to the "generally recognized standards and practices for using force under the circumstances of the case" and prohibiting him from offering legal opinions or conclusions. *See id.* at p. 17 (citation omitted). And at the pretrial conference, Freeman's counsel, Patrick McPhail, advised the Court that he would not pursue the assault count against Whittle.

On July 22, 2024, the Court commenced a jury trial that lasted one- and one-half days. The Court submitted three claims to the jury: excessive use of force; unlawful arrest; and battery. The jury returned verdicts for Freeman on each claim. (Doc. 58). The jury found that Freeman sustained actual damages in the amount of $18,000.00 and that Whittle should be liable for punitive damages in the amount of $50,000.00. *Id.* The Court entered judgment against Whittle and ordered him to pay Freeman damages in the amount of $68,000.00. (Doc. 63). As the prevailing party, Freeman's counsel now seeks attorney's fees and costs.

## I. ATTORNEY'S FEES

Pursuant to 42 U.S.C. § 1988, in a § 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court has made clear that, in the absence of special circumstances, "a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760–61 (1989). This more-or-less mandatory awarding of fees under § 1988 is to ensure "'effective access to the judicial process' for persons with civil rights grievances," and thereby fulfill § 1983's purpose. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94–

1558, p. 1 (1976)). "Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotations and citations omitted). By providing a mechanism by which attorneys who take on civil rights claims can recover their fees should they prevail, Congress has incentivized the bar to take these cases in the first place.

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). Here, Freeman is the prevailing party, and Whittle does not challenge that. Rather, Whittle argues the amount requested is unreasonable.

To calculate a reasonable fee award, courts look to the "lodestar" amount, i.e., "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. When making this determination, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[1] But often, these factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

---

[1] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (1983) (citing *Johnson*, 488 F.2d at 717–19).

Here, Freeman asks the Court to award fees based on the following rates and hours:

Requested Fees

| Biller | Requested Hourly Rate | Hours Billed | Billed Amount |
|---|---|---|---|
| Patrick McPhail (*attorney*) | $500 | 239.4 | $119,700.00 |
| Amy McCoy (*paralegal*) | $275 | 19.9 | $5,472.50 |
| **Total** | | **259.3** | **$125,172.50** |

### A. Reasonableness of Hourly Rate

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014) (citing *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 995 (8th Cir. 2012)). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). However, "where the plaintiff does not use local counsel, the district court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." *Snider*, 752 F.3d at 1159–60 (citing *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)).

Freeman asks the Court to award his attorney, Patrick McPhail, $500 per hour— the prevailing rate in St. Louis, Missouri, where Mr. McPhail is located. Freeman, however, has not provided any evidence that he was unable to "secure competent counsel" in the Northwest Arkansas community despite "diligent, good faith efforts." *See id.* at 1159–60.

4

In fact, the Court has no information about Freeman's attempt to obtain local counsel. Instead, the Motion argues that Freeman's decision to hire an attorney from St. Louis was reasonable because it is near Freeman's home and because "the parties universally recognize the importance of retaining lawyers with the requisite skills to litigate this case," as evidenced by Whittle's counsel being based several hours outside Fayetteville. (Doc. 66, pp. 7–8). The Court is unpersuaded.

The Court is familiar with the local bar and frequently sees § 1983 excessive force cases competently litigated by local counsel. As Freeman notes in his briefing, this case may have been less desirable due to the lack of lasting physical injury, *see* Doc. 66, pp. 3–4, but there was nothing particularly unique about the legal or factual issues in this case that required a level of expertise beyond that of the local bar. *See, e.g.*, *Hum. Rts. Def. Ctr. v. Baxter Cnty., Ark.*, 2023 WL 7404236, at *8 (W.D. Ark. Oct. 30, 2023) [hereinafter "*HRDC*"] (expanding the relevant community from the rural division where the case was litigated because the plaintiff argued that "it struggled to locate local counsel[,] was unable to find representation within the [ ] division," and had to bring in First Amendment experts). The Court applies the prevailing rate in Northwest Arkansas, where the case was litigated.

Mr. McPhail is an associate at Simon Law Firm, P.C. with approximately 8 years of experience. His experience runs the gamut of personal injury, including a $1.2 million total judgment in a § 1983 case in 2021 and sitting third chair in a § 1983 trial. Mr. McPhail has been named to *Best Lawyers: Ones to Watch in America* in medical malpractice, personal injury, and products liability litigation. Despite Mr. McPhail's accomplishments, $500 per hour does not reflect the prevailing rates in Northwest Arkansas, Mr. McPhail's expertise

in this particular area of law,[2] or Mr. McPhail's performance at trial. The Court finds a rate of $250 per hour appropriate here.

Amy McCoy has 15 years' experience as a paralegal. She has extensive trial experience, including a § 1983 case. With respect to Ms. McCoy, the Court finds her requested rate of $275 to be excessive for the Northwest Arkansas market. The Court awards paralegal work the rate of $75 per hour. However, as discussed below, much of the work completed by Ms. McCoy was purely clerical or secretarial, which the Court considers non-compensable attorney overhead.

### B. Reasonableness of Hours Billed

Mr. McPhail billed a total of 239.4 hours for his time in this case. He was the lead attorney in this case from February 2022—when he first began representing Freeman—to its disposition at trial in July 2024 and through the fees phase. Mr. McPhail states in his declaration that he made efforts to eliminate administrative tasks and duplicative work

---

[2] *HRDC* provides helpful comparators in setting the appropriate rate for Mr. McPhail. There, the Court applied the prevailing rates in Northwest Arkansas for a partner and two junior attorneys. 2023 WL 7404236, at *9.

The partner had over 40 years' experience litigating First Amendment issues, had consistently been named one of "America's Leading Lawyers" in First Amendment Litigation by Chambers USA, and had co-authored a First Amendment treatise. The Court reduced his hourly rate from $500 to $325. *Id.*

One of the junior attorneys had six years' experience practicing law, with a focus on First Amendment litigation. He also taught First Amendment law at University of Washington School of Law, and opposing counsel noted his "excellent performance" stood out. The Court approved his rate of $300 per hour. *Id.*

Another junior attorney with a similar amount of litigation experience received an award of $250 per hour. The plaintiff did not provide a resume for this attorney, so the Court could not discern whether she had any expertise in litigating First Amendment or civil rights in the prison context. *Id.*

from his billing and that he omitted hours unrelated to the successful result against Whittle (e.g., hours related to prior-Defendant Madison County's successful motion for summary judgment). The Court's review of Mr. McPhail's time log confirms the hours billed reflect efficient and focused work on matters reasonably necessary to prosecuting the case against Whittle. Additionally, the case was appropriately and leanly staffed. The Court notes that Kevin Carnie was also an attorney of record in this case and Mr. McPhail's time logs show that he consulted with Mr. Carnie several times. Still, only Mr. McPhail attended hearings and trial, and Mr. Carnie does not seek any fees for his work in this case. The Court finds Mr. McPhail's 239.4 hours to be reasonable.

Whittle argues that Ms. McCoy's time should be struck from the fee award because it consisted only of clerical or secretarial work. The Supreme Court has noted that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). From its line-item review of Ms. McCoy's time log, the Court determines Ms. McCoy spent 9.8 hours on paralegal work, like drafting and research, and 9.1 non-compensable hours on purely clerical or secretarial work, such as scheduling, filing, and correspondence. Additionally, the Court omits the hour that was spent finalizing Freeman's response to Madison County's motion for summary judgment.

\* \* \*

In sum, the Court awards Freeman's attorney's fees based on the following lodestar of hours and billing rates:

Awarded Fees

| Biller | Hourly Rate | Hours Billed | Billed Amount |
|---|---|---|---|
| Patrick McPhail (*attorney*) | $250 | 239.4 | $59,850.00 |
| Amy McCoy (*paralegal work*) | $75 | 9.8 | $735.00 |
| **Total** | | **249.2** | **$60,585.00** |

Considering the other applicable *Johnson* factors, the Court finds this lodestar calculation to fully and fairly compensate Freeman for attorney fees reasonably incurred.

## II.    COSTS

"Unless a federal statute . . . provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This includes taxable and non-taxable costs. Taxable costs are set forth in detail at 28 U.S.C. § 1920 and include fees of the clerk and marshal, fees for printed and electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of any materials necessarily obtained for use in the case, docket fees, and compensation of court-appointed experts and interpreters. Beyond these taxable costs, the prevailing party may recover as attorney fees "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys," i.e., non-taxable costs. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294–95 (8th Cir. 1996).

### A. Non-taxable Costs as Part of Fee Award

Freeman seeks $23,830.95 in non-taxable costs as part of the fee award. Whittle argues that many of Freeman's non-taxable costs are not recoverable, including expert costs, costs for medical records, mileage, and various shipping costs with Fedex.

Freeman seeks reimbursement for $20,448.88 in expert fees, but such costs are not fully compensable in § 1983 cases. In 1991, the Supreme Court held that § 1988 did not "convey[ ] authority to shift expert fees" beyond the fee provided by 28 U.S.C. § 1821(b) for appearance at trial. *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991). Congress promptly amended § 1988 to permit the award of expert costs in cases brought under 42 U.S.C. §§ 1981 and 1981a. *See* 42 U.S.C. § 1988(c). The amendment, however, did not include award of such fees in § 1983 cases. *See Jenkins by Jenkins v. Missouri*, 158 F.3d 980, 983 (8th Cir. 1998) (affirming the denial of the award of expert fees in § 1983 case); *see also* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2678 (4th ed. 2024) (reviewing the evolution of expert-fee awards under § 1988 and explaining the limit on such fees in § 1983 "remains controlling"). To be sure, under § 1821(b) an expert witness is still entitled to an "attendance fee of $40 per day for each day's attendance" and "for the time necessarily occupied in going to and returning from the place of attendance." *See Casey*, 499 U.S. at 102. Freeman's expert attended one day of trial and traveled from out of state, so the Court will reimburse Freeman $120 ($40 per diem x 3 days) under § 1821(b). The Court will reduce the requested non-taxable costs by $20,448.88 and tax an additional $120 against Whittle under the Bill of Costs. *See infra* subsection II(B). But, much to Freeman's counsel's chagrin, the Court cannot award expert fees beyond this per diem rate.

Freeman seeks reimbursement for $510.54 in mileage for trial. Whittle objects, aptly pointing out that Freeman's counsel did not include the miles or rate in this calculation. Based on the briefing and hours billed for travel, it is reasonable to infer that Mr. McPhail was driving from his home in St. Louis, Missouri to Fayetteville, Arkansas. The hours billed show that Mr. McPhail made round trips to Fayetteville for the pretrial conference and trial. The Court takes judicial notice of the fact that there are approximately 340 miles between Fayetteville and St. Louis. Two roundtrips between these cities would roughly equal 1,360 miles. At $510.54, that comes out to approximately $0.38 per mile, which this Court finds to be reasonable. *See HRDC*, 2023 WL 7404236, at *11 (approving travel expenses of $0.58 per mile).

Next, Whittle argues that Freeman should not be reimbursed for medical record costs because he did not use these records at trial and never sought damages related to the medical records. The Court finds it reasonable for a party to seek medical records in an excessive force case, particularly considering almost all records were sought before or near the deadline to amend pleadings. Such records were not only relevant to potentially amending the complaint to recover medical expenses but also in assessing Freeman's injuries in preparation for trial and settlement discussions.

Lastly, Whittle challenges several unspecified FedEx charges. Despite these charges not being further explained, $149.33 in shipping costs is reasonable, particularly at the start of a case and around the time of trial, which is when these charges occurred.

In sum, the Court reduces Freeman's requested non-taxable costs by $20,448.80. This leaves Freeman with an award of **$3,382.07** in non-taxable costs.

## B. Taxable Costs Pursuant to 28 U.S.C. § 1920

Freeman has also filed an unobjected-to Bill of Costs for $6,266.19 in taxable costs. These include fees of the clerk, fees for service of summons and subpoenas, fees for printed or electronically recorded transcripts, fees and disbursements for printing, and fees for witnesses. The Court has reviewed the Bill of Costs and supporting documents and finds that the asserted costs were reasonably necessary to litigate this case. Freeman did not seek witness fees for his expert witness in his Bill of Costs, presumably thinking he would recover expert fees as part of the non-taxable fee award. As discussed above, Freeman cannot recover expert fees as part of the attorney's fee award, but he is able to recover the $40 per diem witness fee under 28 U.S.C. § 1821(b). So, the Court will add $120, as calculated in Section II(A), resulting in **$6,386.19** in taxable costs.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** the Motion for Award of Attorney's Fees and Non-Taxable Costs (Doc. 65) is **GRANTED IN PART AND DENIED IN PART** as set forth above. Defendant is **ORDERED** to reimburse Plaintiff his reasonable attorney's fees in the total amount of **$60,585.00** and non-taxable costs in the amount of **$3,382.07**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to tax costs in favor of Plaintiff against Defendant in the amount of **$6,386.19**.

**IT IS SO ORDERED** on this 18th day of February, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE